## Whitworth Estate

*John J. Lombard, Jr.,* and *Obermayer, Rebmann, Maxwell & Hippel,* for accountant.

*W. Jos. Harrison, 3rd* and *John Longstreth,* for claimants.

*David S. Molod,* for Commonwealth.

BURKE, J., January 7, 1970.—Robert J. Whitworth died November 29, 1968, leaving a will dated September 20, 1968, duly probated, upon which letters testamentary were granted to the accountant on December 6, 1968. Proof of advertisement of the grant of same was submitted.

There has been no payment on account of Pennsylvania inheritance tax, and Mr. Molod entered his appearance on behalf of the Commonwealth, claiming such inheritance tax as may be due and assessed, without prejudice to the rights of the Commonwealth to pass on debts and deductions. The awards will be made subject thereto.

Testator was survived by a spouse, Julia B. Rich Whitworth, who has filed her election to take against testator's will and all inter vivos transfers. The problems raised by the filing of the election will be discussed hereinafter.

By his will, testator, after directing the payment of his funeral expenses and expenses of his last illness, gave his diamond ring to his nephew, Hugh Whitworth. The ring was not found among testator's effects. Notice of this fact was given to Hugh Whitworth and he has raised no objection. The gift of the ring is adeemed.

426

Testator gave the sum of $500 to his friend, Dorothy Snowdon. Dorothy Snowdon by writing dated February 14, 1969, renounced the legacy.

Testator gave the sum of $5,000 to his friend, Frances Grimes. It is stated that by reason of the election filed by the widow, there will not be sufficient funds for the payment of the legacy to Frances Grimes. This results from the fact that the legacies, hereinafter discussed, of the Keystone Custodian Funds stock series S4 and K2 are deemed by the accountant to be specific legacies which take priority over the general legacy of $5,000. Notice of the accountant's position was given to Frances Grimes. She was represented by counsel at the audit who raised no objection. The position of the accountant is well taken. In the event that there are insufficient funds to pay administration expenses and debts and satisfy the widow's election and the $5,000 legacy to Frances Grimes, it is ordered that the legacy to Frances Grimes shall abate in favor of the widow's election before the specific legacies of the above-mentioned mutual funds.

By paragraph FIFTH, testator gave his interest in certain real estate located in Louisville, Ky., to his daughter, Jane Daily. The real estate is not subject to the jurisdiction of this court and no award thereof will be made.

By paragraph SIXTH of his will, testator gave "any shares owned by me at the time of my death in Keystone Custodian Funds S4 to Industrial Valley Bank and Trust Company and Jane Daily trustees" in trust for the children of Jane Daily designated by testator as his grandchildren, living at testator's death to apply principal and income for the education of each and to pay to each upon his attaining the age of 21 years the remaining balance of his or her share of principal and income with a gift over in favor of the remaining grandchildren in the event of the death of

any grandchild prior to attaining 21. At his death, testator owned 1,044.69 shares of Keystone Custodian Funds S4 valued at $8,148.58.

By paragraph SEVENTH of his will, testator gave "any shares owned by me at the time of my death in KEYSTONE CUSTODIAN FUND K2" to the above-named trustees in trust to use income and principal, if necessary, to pay $100 per month to his friend, Mary McNeill, and upon her death to distribute any remaining principal and income to "that person or persons then living who would be entitled to my residuary estate as hereinafter provided." Testator gave his residuary estate to Jane Daily (whom he designated his daughter) if she survived him, "otherwise to her then living issue." At his death, testator owned 635.833 shares of Keystone Custodian Fund K2 valued at $5,188.39.

All debts, administration and funeral expenses have been paid from assets of decedent other than the above-indicated mutual funds. The net estate, according to the account, amounts to $20,682.77. The share of Julia B. Rich Whitworth under her election pursuant to section 8 of the Wills Act of April 24, 1947, P. L. 89, is one-half of the net estate or $10,341.38. The combined inventory or account value of the mutual funds is $13,336.97. It is apparent that the assets remaining in the estate exclusive of the mutual funds will not be sufficient to satisfy the widow's election. Some portion of the mutual funds must be used to satisfy the widow's election.

A further problem is raised concerning the order of abatement of the two trusts of mutual funds inter se. Although testator refers to Jane Daily as his daughter and to her children as his grandchildren, it is agreed by all parties in interest, including Jane Daily, that testator was never married to Jane Daily's mother.

The question is raised whether under section 751

(a)(2) of the Fiduciaries Act of April 18, 1949, P. L. 512, the gift in trust for Mary McNeill should be abated in favor of the gift in trust for the children of an illegitimate child of testator. The resolution of the question hinges upon the meaning of the word "issue" under section 751, which provides, inter alia:

"Order of Abatement — (a) General Rules. *Except as otherwise provided by the will* if the assets are insufficient to pay all claimants and distributees, in full, the shares of distributees, without distinction between real and personal estate, shall have priority of distribution in the following order: (1) Property specifically devised or bequeathed to or for the benefit of the surviving spouse; (2) Property specifically devised or bequeathed to or for the benefit of decedent's *issue*; (3) Property specifically devised or bequeathed to or for the benefit of other distributees; . . . ." (Italics supplied.)

The accountant takes the position that the word "issue" as used in the act means legitimate issue only. Counsel for the "grandchildren" has made the ingenious argument that because the Fiduciaries Act does not define the word "issue" as used in section 751, the court should construe the word to include the illegitimate issue of decedent. The argument of counsel for the grandchildren is without merit.

The statutory law in Pennsylvania has been traditionally rigid in denying an illegitimate any rights as a member of the family of his natural father. See, for example, Wills Act of April 24, 1947, sec. 14(7), Intestate Act of April 24, 1947, P. L. 80, sec. 7, and Estates Act of April 24, 1947, P. L. 100, sec. 14(4). Further, the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 101, as amended, 46 PS §601, provides:

"The following words and phrases, *when used in any law hereafter enacted unless the context clearly*

*indicates otherwise,* shall have the meanings ascribed to them in this section" (Italics supplied). Section 101 (56) provides that " 'issue,' as applied to the descent of estates, means all *lawful,* lineal descendants of a common ancestor". (Italics supplied.)

To hold that the children of an illegitimate child are the "issue" of the father of the illegitimate under section 751 would be to give the word a definition which is at variance with the definition used by the legislature in all the other acts dealing with decedent's estates. The only reasonable and consistent definition of the word issue as used in section 751 is that a decedent's "issue" includes only his lawful, lineal descendants.

I find as a matter of law that the gift in trust of the Keystone Custodian Funds S4 for the children of Jane Daily is not a devise to "issue" of testator as provided in section 751(a)(2) and, therefore, is not entitled to priority in the order of abatement, under that section.

The question has been raised whether the will indicates an intent that the children of Jane Daily should receive a preference in distribution over Mary McNeill.

There is nothing in the will which indicates that testator intended that the devise in trust for the children of Jane Daily should be given a preference in order of abatement over the devise in trust for Mary McNeill.

The two funds shall abate proportionately. The accountant has indicated in the statement of proposed distribution the percentages which it will use in calculating the abatement between the two funds and in allocation of the income earned. In the absence of an objection to the figures submitted, the accountant's proposed figures are adopted.

The statement of proposed distribution indicates in paragraph 1 (schedule B) that the Industrial Valley Bank and Trust Company did not wish to accept the two trusts because of their size. It was suggested that

Jane Daily act alone as to the trust for her children and act as substituted trustee for the trust for Mary Mc-Neill. Counsel for Jane Daily stated at the audit that she was not willing to serve as substituted trustee for Mary McNeill. By letter, counsel for Industrial Valley Bank and Trust Company advises the court that the bank has reconsidered its position and is willing to serve as trustee. The awards will be made accordingly. . .

And now, January 7, 1970, the account is confirmed nisi.